Lanzinger, J.,
dissenting.
{¶ 46} I respectfully dissent. By affirming the judgment of the Tenth District Court of Appeals, holding that excessive air emissions occurring during a stack test conducted at a facility’s maximum capacity establish a presumption that a continuing violation exists, the majority allows the state a lesser burden of proof and disregards the defendants’ right to due process.
{¶ 47} After a lengthy trial and meticulous findings of fact, and as part of the total enforcement penalty of $350,123.52, the trial court assessed a civil penalty of $4,500 for Shelly’s admitted violations in the seventh claim for relief. The court of appeals reversed without determining that the trial court’s conclusions were against the manifest weight of the evidence. State ex rel. Ohio Atty. Gen. v. Shelly Holding Co., 191 Ohio App.3d 421, 2010-Ohio-6526, 946 N.E.2d 295. Shelly does not dispute that in 2002 and 2006, five of its facilities violated the air-emissions levels set forth in their permits to install (“PTIs”) during the time that stack tests measured them at maximum capacity. What Shelly does contest is its ongoing liability for a “continuing violation” based on the record of this case.
{¶ 48} I would accept Shelly’s argument that no continuing civil penalty may be assessed because notwithstanding the excess pollutants that were emitted on the day of testing, the state has not met its burden of proving that excess pollutants were emitted every day for which a penalty is sought.
*79 I. Legal Argument

A. The State Must Prove a Continuing Violation to Collect Ongoing Civil Penalties

{¶ 49} As the majority explains it, the issue here is “how long the violation continued in the interim period until Shelly demonstrated compliance with the permit terms. Specifically, the issue is whether that violation may be presumed to be continuing until Shelly rebuts the presumption with competent evidence that a facility is either (1) not violating its permit or (2) not violating its permit in a continuing manner.” Majority opinion at ¶ 22. In other words, is the defendant liable for a civil penalty for a continuing violation?
{¶ 50} This is a civil enforcement action. Ohio law requires the state to show by a preponderance of the evidence that a violation of law actually occurred for each day the state seeks a penalty or that an ongoing violation occurred before the state can collect penalties for a continuing violation. Cincinnati, Hamilton & Dayton Ry. v. Frye, 80 Ohio St. 289, 88 N.E. 642 (1909), paragraph two of the syllabus (“In civil cases the jury deals only with probabilities, and the burden of proof is ordinarily carried by a preponderance of the evidence”); Ohio Valley Radiology Assocs. v. Ohio Valley Hosp. Assn., 28 Ohio St.3d 118, 122, 502 N.E.2d 599 (1986) (“the sole responsibility of a defendant who has effectively contested the claimant’s allegations by pleading is to refute the claimant’s case after the latter has established a prima facie case by proper evidence” [emphasis sic]).
{¶ 51} Even under 42 U.S.C. 7413(e)(2), the section of the Clean Air Act that sets forth the standard for federal enforcement actions, the plaintiff must make a prima facie showing that the conduct or events giving rise to the violation are likely to have continued or recurred after the defendant has been notified of the violation:
[W]here the Administrator or an air pollution control agency has notified the source of the violation, and the plaintiff makes a prima facie showing that the conduct or events giving rise to the violation are likely to have continued or recurred past the date of notice, the days of violation shall be presumed to include the date of such notice and each and every day thereafter until the violator establishes that continuous compliance has been achieved, except to the extent that the violator can prove by a preponderance of the evidence that there were intervening days during which no violation occurred or that the violation was not continuing in nature.
*80 (Emphasis added.) 42 U.S.C. 7413(e)(2).
{¶ 52} In other words, in a federal enforcement action, there is no presumption of a continuing permit violation unless a prima facie showing has been made. The government carries the burden of making a prima facie showing that the conduct or events giving rise to the violation are likely to have continued each day. It is only after this prima facie showing is made that the defendant must offer rebuttal evidence that a continuing violation has not occurred.
{¶ 53} A federal enforcement action brought under the Clean Air Act offers guidance as to what a state could do to fulfill its own burden to prove a violation under its own environmental laws. United States v. Hoge Lumber Co., N.D.Ohio No. 3:95 CV 7044, 1997 U.S. Dist. LEXIS 22359 (May 7, 1997). In Hoge, the court found that a continuing violation had occurred based on unrebutted evidence offered by the Department of Justice showing actual stack-test exceedances (eight in all) plus (1) an affidavit from an expert engineer who testified that the permit holder performed eight stack tests on its boiler under various operational conditions, including operating conditions as low as 22 percent of capacity (i.e., not maximum operating capacity) and that all eight stack tests showed emissions violations, (2) testimony by a company witness who testified that the boiler was not operating in compliance with its air permit limits and expressed doubt that the boiler could ever meet the emission limit required by the air permit, and (3) evidence of actual days on which the defendant operated its boiler in a manner exceeding emissions — 700 days over a 12-year period.
{¶ 54} But here, in contrast, the state did not offer any evidence that “the conduct or events giving rise to the violation are likely to have continued or recurred past the date of notice.” 42 U.S.C. 7413(e)(2). And the majority holds that the state establishes a prima facie case with a single failed stack test.
{¶ 55} In another case dealing with the need for a PTI to control air emissions, we stated:
Keeping in mind the purposes of R.C. Chapter 3704, we must strive to reach a balance between promoting and enhancing clean air and protecting and encouraging economic growth and opportunities for the people of this state. This requires that business entities not be subjected to an interminable task of dealing with excessive regulation or requirements not explicitly covered by statute or rule. Therefore, any uncertainty with regard to the interpretation of R.C. Chapter 3704 and rules promulgated thereunder should be construed in favor of the person or entity (manufacturer or otherwise) affected by the law.
*81 State ex rel. Celebrezze v. Natl. Lime & Stone Co., 68 Ohio St.3d 377, 385, 627 N.E.2d 538 (1994). At the very least, the state must be held to its burden of proof.

B. One Failed Stack Test Does Not Prove a Continuing Violation

{¶ 56} Each of Shelly’s PTIs requires the facility to be operating within the allowable levels of various pollutants as established for each facility. Part II, Section A.1 of the individual permits sets forth both emissions limits per hour and emissions limits per year. Each permit sets allowable levels of emissions for certain classes of air pollutants. Part II, Section E.l of the permits specifies the testing methods that the plant must use to establish compliance. In Shelly’s case, the use of a plant’s maximum operating capacity is a stated part of the testing protocol. On testing day, facility emissions are tested when a plant is operating its air-pollution sources at the maximum capacity possible. (“The test shall be conducted while the emissions unit is operating at or near its maximum capacity * * *.”) While the permit limits emissions both by hour and by year, the stack test requires measurement of emissions only on a particular day.
{¶ 57} The majority treats this testing requirement as a separate permit term. But the seventh claim for relief in the complaint against Shelly alleges air-emission violations, not testing violations. There is no allegation that Shelly violated the testing requirements themselves — the tests were done in accordance with the maximum-capacity protocol set forth in the permit. Stated another way, the permit does not mandate that Shelly’s plants operate at a constant maximum capacity so as to support a presumption that emissions levels are continuously being exceeded once an initial stack test has been failed.
{¶ 58} Shelly’s argument that a stack test does not represent normal operating conditions at its facilities is compelling. Thus, on days when a facility is not running at maximum capacity, it is possible that air emissions are within the limit established in that facility’s PTI. In failing to show that the emissions violations (appearing when the facility was running at maximum capacity) were likely to continue, the state failed to present evidence to support the presumption of a continuing air-emission violation that justified daily penalties.
{¶ 59} A civil penalty pursuant to R.C. 3704.06(C) was in order based upon Shelly’s admitted violations of facilities named in the seventh claim for relief. Nevertheless, the state offered no evidence beyond the single failed test to show that a continuing violation existed beyond the dates of each failed stack test.
{¶ 60} The court of appeals’ opinion looked at a snapshot in time — stack testing at maximum capacity — and created an irrebuttable presumption that the company is continuously violating its permit until it shows that it can pass another stack test, which realistically will not occur before at least 30 days after Shelly gives *82 the requisite notice to the Ohio Environmental Protection Agency, according to Part II, Section E.l of the permits. Even if this court applies the federal Clean Air Act’s prima facie burden-of-proof standard, as the state now urges, the state still has the burden to show that the conduct or events giving rise to the violation are likely to have continued or recurred. 42 U.S.C. 7413(e)(2).
Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Gregg H. Bachmann and Gary L. Pasheilich, Assistant Attorneys General, for appellee.
Bott Law Group, L.L.C., and April R. Bott; Chester, Wilcox & Saxbe, L.L.P., and Sarah Morrison, for appellants Shelly Materials, Inc. and Allied Corporation.
Brady, Coyle & Schmidt, Ltd., and Brian P. Barger, urging reversal for amici curiae Ohio Chamber of Commerce, Ohio Aggregates and Industrial Minerals Association, Flexible Pavements, Inc., Ohio Coal Association, Ohio Contractors Association, and Associated General Contractors of Ohio.
II. Conclusion
{¶ 61} Civil penalties of up to $25,000 a day are significant deterrents to environmental violations, and potential penalties should be imposed only for each day that the state has proven a violation by a preponderance of the evidence.
{¶ 62} Because a continuing violation has not been proven in this case, I would reverse the judgment of the court of appeals. I would hold that in a civil action pursuant to R.C. 3704.06, the state must prove each day of violation for which it seeks a civil penalty.
O’Donnell, J., concurs in the foregoing opinion.